24 C.C.P.A.(Patents)

## In re FRENCH. *
### Patent Appeal No. 3788.

Court of Customs and Patent Appeals.

May 3, 1937.

George A. Smith, of Philadelphia, Pa., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Certain claims of appellant's application for a reissue of his patent No. 1,-944,158, of January 23, 1934, relating to method of producing zinc oxide, having been allowed, appellant has appealed to this court from a decision of the Board of Appeals of the United States Patent Office, affirming the action of the Primary Examiner in refusing to allow claims 2, and 6 to 10, inclusive.

Claims 2 and 6 are illustrative of the claims on appeal and follow:

*Judgment affirmed on rehearing 90 F.(2d) 113.

"2. The method of producing zinc oxide from by-product zinc residues containing an alkali metal salt and a substantial amount of zinc carbonate, which includes boiling the residues with water to render the alkali metal salt content soluable, washing to dissolve and practically completely remove the alkali metal salt content, and then calcining the residue."

"6. The method of producing zinc oxide from by-product zinc residues comprising metallic zinc, zinc carbonate, zinc sulphite, and an alkali metal salt, which includes suspending the residue in water, aerating to effect oxidation of metallic zinc, treating with water to dissolve the alkali metal salt, removing the alkali metal salt in solution, calcining the residue under oxidizing conditions to convert the zinc carbonate into zinc oxide and to oxidize zinc sulphite to zinc sulphate, washing out the zinc sulphate and grinding the zinc oxide."

The alleged invention relates to a process of producing a high-grade pigment from zinc residues. The examiner in his statement sets forth certain "Requisites of the Invention" as follows:

"To obtain 'a high grade zinc oxide,' the invention proposes: (1) to oxidize the metallic Zn content of the residue to ZnO; this is attained by suspending the by-product Zn residue in water, forming a *pulp* and aerating this pulp.

"(2) to '*render* the alkali metal salts * * * soluble' and remove these soluble salts, leaving a residue containing ZnO, $ZnSO_3$, and $ZnCO_3$; this is accomplished by boiling the water containing the suspended residue or pulp of (1), for 30 minutes or longer. The salt solution is then removed from the residue.

"(3) to calcine this residue in order to convert the $ZnCO_3$ to ZnO and the $ZnSO_3$ to $ZnSO_4$; this calcination is performed in the presence of air in order to assure formation of $ZnSO_4$.

"(4) to remove $ZnSO_4$ from the ZnO by washing with $H_2O$; and grinding and drying the ZnO product."

The examiner in rejecting claims 2, 7, 8, and 10 held that they were incomplete because they did not embody all of the essential details necessary to produce the requisite result. The examiner also rejected claims 6 to 10, inclusive, on the ground that there was no inadvertence, accident, or mistake shown in failing to obtain such claims in the original patent.

As to the first ground of objection, the examiner said:

"It is submitted that to obtain the desired high grade ZnO it is essential to satisfy *in combination* the requisites of (1), (2) and (3), specified above. As has been pointed out in the record of the parent application, the individual steps are devoid of novelty. * * *

"The general tenor of the disclosure and arguments of record in the parent application appear to concede that the invention resides in the combination of steps whereby a *high grade* ZnO will be produced as distinguished from the previously made low grade product. * * *

"Claims 2, 7, 8 and 10 are accordingly incomplete and unpatentable, since they do not embody all of the essential details necessary to yield the *high grade* ZnO when by-product zinc residues of the type disclosed are treated, or since they combine steps individually involving no invention in a process which gives no improved result."

The examiner points out in detail wherein the several claims lack the steps which he considers requisite.

As to this feature of the case, the board said:

"Claims 2, 7, 8 and 10 have also been rejected as being incomplete because claims 2 and 7 omit step (3) and claims 2, 7, 8 and 10 omit step (1).

"Applicant argues that there may be such a small amount of metallic zinc and $ZnCO_3$ present that it is not necessary to oxidize them. There is nothing in the patent to indicate this and we believe that all of the steps are essential in order to obtain the high grade pigment desired, as distinguished from pigments obtained in prior art processes."

As to the second ground of rejection the examiner stated:

"Claims 6 to 10 have been presented for the purpose of obviating this 'undue limitation' [heating or boiling]. Failure to earlier present claims of the scope of 6 to 10 is attributed to 'inadvertence, accident or mistake' on the part of the applicant, it being alleged that he failed to inform his attorneys 'that the method in accordance with his invention might be practiced without heating or boiling the water used to treat the residues to remove alkali metal salt' (From Oath).

"A study of the specification of the *parent* application on the question of the removal of the alkali metal salts from the zinc residues leads to the conclusion that the disclosure is limited to the boiling treatment. The prior art found it necessary to calcine the residues 'in order to render the alkali metal salt content soluble.' The calcination also served to oxidize any metallic zinc particles present. (Parent application #504,421, page 1, lines 17–20). Applicant teaches that he can effect the oxidation of metallic zinc in suspension in water by blowing with air, but the *rendering* of the alkali metal salt content soluble is effected by boiling (Appl. #504,421, page 1, line 29; page 2, lines 16–20). No other manner is suggested or can be inferred from the specification.

"It is submitted that the *Reissue* application unwarrantedly alters the tenor of the original disclosure in the amendatory matter supplied to page 2, lines 24–27. This variation has the effect of minimizing the thought of the original disclosure,— that the boiling step is a requisite,—to the *inference* that the boiling is optional; however page 1, lines 24–26 and page 2, lines 4–6 of the Reissue still contain the definite indication that it is essential to *render* soluble the alkali metal salts of the by-product Zn residue. Furthermore the Reissue oath is clearly inconsistent · with the *original* disclosure in its indication that 'boiling or heating is desirable but not essential.' The tenor of the specification as originally presented clearly indicates that boiling is essential. * * *

" * * * the presence in amended original claim 1 [which was cancelled] of the expression now introduced into claims 7 to 10 indicates that the broad concept of rendering the alkali metal salts soluble was duly considered by applicant and deliberately cancelled. Under such conditions, there could have been no inadvertence, accident or mistake. * * * "

In his brief appellant points out that "through an error in making up the record, the claim designated '1' on page 37 of the record is misquoted." The Solicitor for the Patent Office in his brief states:

"It is noted that the record in this case does not include *original* claim 1 of application Serial No. 504,421 which is referred to by the examiner and the decision of the Board of Appeals and which these tribunals said was cancelled after it had been amended.

"The failure to include in the record the original claim 1 which was cancelled

after amendment apparently must be taken as indicating that appellant does not wish to controvert any of the statements made by the examiner or the Board of Appeals as to what subject-matter was included in the cancelled claim."

Since appellant has not seen fit to have incorporated into the instant record the said claim 1, we must assume that the tribunals below correctly found that the cancelled claim contained the elements which the tribunals said it did. Upon this state of the record, we must conclude that the board's rejection of claims 7 to 10 upon the ground of no inadvertence was correct.

This leaves for consideration the rejection by the tribunals of claims 2 and 6. As before stated, claim 2 along with other claims was rejected upon the ground that it did not embody all the essential details necessary to produce the requisite results. These claims involve technical, scientific subject-matter. There is a concurrence of views of the Patent Office tribunals on this subject and we are not convinced that the board's decision is erroneous.

As to claim 6, it will be noted in the above quotation from the examiner's statement that since the "boiling" limitation in the patent claims, which applicant seeks to obviate by reissue, was a requisite and important part of appellant's invention as disclosed in his parent application, his failure to present broader claims was not inadvertent. The same holding also relates to claims 7 to 10, inclusive. After considering appellant's parent application carefully, we, like the tribunals below, can arrive at no other conclusion than that the failure to make broader claims in the parent application was not the result of inadvertence, and we are of the opinion that the rejection by the examiner and by the board of said claim 6 for the reasons stated by them was proper.

Appellant claims his alleged inadvertence occurred by reason of the fact that he failed to notify his patent attorney that the boiling step was unimportant and that the invention might be practiced without heating or boiling the water. From a statement by the examiner it appears that this must have been stated in some oath not found in the record. It is not a question here of a limitation being in a claim only, but the parent application stated that: "When the metallic zinc content has been oxidized the suspended residue is heated to boiling and boiled for a period to render the alkali metal salts, as sodium carbonate, sodium sulphite, etc. soluble in water. Boiling may be continued for say up to thirty minutes or longer, if necessary."

We are in agreement with the conclusion reached by the Board of Appeals and its decision is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in this decision.